IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ALEJANDRO FLORES-ROMERO,

Plaintiff,

v.                                    CASE NO. 07-3269-SAC

UNITED STATES OF AMERICA,

Defendant.


MEMORANDUM AND ORDER

Plaintiff, a prisoner incarcerated in a federal correctional facility, proceeds pro se and in forma pauperis on an amended complaint seeking relief under the Federal Tort Claims Act (FTCA) on allegations related to the medical care provided for an injury sustained during an altercation at the United States Penitentiary in Leavenworth, Kansas (USPLVN).

Plaintiff claims he was assaulted by Lt. Starr on April 2, 2006, as Star was responding to a fight at the facility. Plaintiff claims he was not involved in the fight, and contends Starr slammed him to the wall and then to the ground for no reason. Plaintiff claims he sustained injuries from that assault and battery, which have caused him physical pain and neurological damage for which Bureau of Prison (BOP) officials failed to provide adequate or proper diagnosis and treatment, specifically a neurological consultation and stronger pain medication.[1]

_____

[1]Plaintiff also states in his original complaint that February 2007 x-rays taken of his injuries were subsequently lost, and contends their disappearance from his medical file was intended to cover up BOP negligence. These allegations of staff misconduct

Before the court is defendant's motion for dismissal of the amended complaint pursuant to Fed.R.Civ.P. 12(b)(1) and (b)(6), or in the alternative, for summary judgment under Fed.R.Civ.P. 56. Plaintiff filed no response to defendant's motion.

The uncontroverted material facts relevant to plaintiff's FTCA claim include the following.

Plaintiff was incarcerated at USPLVN on April 2, 2006, when several extensive fights broke out in the B-Unit Cellhouse. Staff responded using immediate force to break up the incident and restore order, and reported they observed plaintiff fighting with another inmate.

Plaintiff was subsequently disciplined for Fighting.

The internal investigation of that use of force incident found no deviation from BOP policy, and documented that plaintiff sustained a minor skin scrape on his nose.  Subsequent BOP review of the staff response found the immediate force used in restraining plaintiff was limited and necessary to gain control of inmates, and in response to an immediate threat of harm or injuries to the inmates involved and to staff responding to the incident.

Medical staff evaluating plaintiff after the April 2 incident noted only a minor scrape on plaintiff's nose, and provided medications, treatment, and testing for plaintiff's medical concerns related to that incident. Plaintiff's medical record at that time documented that he had a history of degenerative disc disease, right

---

after plaintiff filed his FTCA administrative claim are not included in plaintiff's supplemental (Doc. 3) or amended complaint (Doc. 10).

hand/arm injury, hepatitis, and anxiety, for which he received treatment during his confinement at the Leavenworth facility.

On May 29, 2006, plaintiff first mentioned a sore neck from a fight two months earlier, and indicated his history of neuropathy, or nerve pain. Plaintiff did not complain of headache, back pain, or paralysis during this examination, and did not indicate his sore neck resulted from the use of force by a staff member. Medical staff diagnosed plaintiff as having neck strain, and prescribed pain medication.

After a full examination on June 14, 2006, plaintiff was diagnosed as having a muscle spasm and was provided education and treatment on that diagnosis. X-rays taken June 19, 2006, noted degenerative disc disease (DDD), with disc degeneration in the cervical area of plaintiff's spine. Plaintiff's medications were monitored and adjusted during July 2006.

On August 7, 2006, plaintiff was referred to the Clinical Director for examination and potential referral for an orthopedic consultation for chronic back pain. Plaintiff was thereafter transferred to the Federal Correctional Institution (FCI) in Forrest City, Arkansas, where he continued to be evaluated and treated for various conditions including his DDD.

On November 8, 2006, plaintiff was evaluated by medical staff after his transfer to an FCI in Memphis, Tennessee. In informal requests to staff members on November 30, 2006, plaintiff requested an orthopedic specialist and/or neurology consult due to headache and back and neck pain, and indicated for the first time that these conditions were due to an assault by Lt. Starr at USPLVN some eight

3

months earlier.  Plaintiff again made a similar claim on January 4, 2007, in an informal request to medical staff.

Plaintiff filed an FTCA administrative claim dated January 17, 2007, seeking payment for pain and suffering from head and neck injuries resulting from being assaulted by Lt. Starr on April 2, 2006, and from the denial of proper diagnosis and medical treatment for those injuries.[2]  The BOP North Central Regional Office denied the claim on August 8, 2007.

FEDERAL TORT CLAIMS ACT

The United States enjoys sovereign immunity from suit, absent a specific waiver of that immunity.  *Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985).  Congress waived that immunity when it enacted the FTCA, granting federal district courts exclusive jurisdiction under the FTCA to hear civil actions for monetary damages for wrongful acts or omissions of a government employee acting within the scope of his or her employment, "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b).  Prisoners are thus allowed to sue the United States under the FTCA "for personal injuries sustained during confinement in a federal prison, by reason of the negligence

─────────────

[2]Tort Claim TRT-NCR-2007-02110 (Supplemental Complaint, Doc. 4, Exhibit H) and (Memorandum in Support of Defendant's Motion to Dismiss, or in the Alternative for Summary Judgment, Doc. 27, Attachment 2, pages 5-6).

The face of that document shows that plaintiff's administrative claim was received by the BOP Mid-Atlantic Regional Office on January 23, 2007, and then received by the BOP North Central Regional Office on February 8, 2007.

of a government employee." *U.S. v. Muniz*, 374 U.S. 150, 150 (1963).

This broad waiver of immunity is limited by specific statutory exceptions. *See* 28 U.S.C. § 2680(a)-(n)(setting forth exceptions to the government's waiver of immunity from suit).   Relevant to plaintiff's allegations, one such exception provides that district courts have no jurisdiction under § 1346(b) to hear claims arising from intentional torts including assault and battery.   28 U.S.C. § 2680(h).

*Motion to Dismiss Rule 12(b)(1)*

Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes the court to dismiss a complaint if the court lacks subject matter of the complaint.  When considering a Rule 12(b)(1) motion to dismiss, the Court may consider matters outside the pleadings. *Holt v. U.S.*, 46 F.3d 1000, 1003 (10th Cir.1995).

Defendant first asserts there is no record of plaintiff's exhaustion of administrative remedies on any tort claim but for his administrative claim dated January 17, 2007, and no contrary showing is made by plaintiff or discerned from the record.

An FTCA claimant must satisfy the jurisdictional prerequisite of exhausting administrative remedies prior to asserting an FTCA claim in district court. *Pipkin v. U.S. Postal Service*, 951 F.2d 272, 275 (10th Cir.1991).  Thus to the extent plaintiff relies on allegations of negligent record keeping or inadequate medical treatment after filing his administrative tort claim, the court has no jurisdiction to consider such claims in this FTCA action. *See In re Franklin Savings Corp.*, 385 F.3d 1279, 1287 (10th Cir.2004)(district court lacks subject matter jurisdiction to

5

proceed under FTCA if plaintiff fails to satisfy FTCA's timing requirements in 28 U.S.C. § 2401(b)).

Defendant also asserts there is no jurisdiction under FTCA to consider plaintiff's allegations to the extent they attempt to implicate any violation of plaintiff's rights under Eighth Amendment, as the United States has not waived its sovereign immunity with respect to constitutional torts. See *F.D.I.C. v. Meyer*, 510 U.S. 471, 477-78 (1994). The court agrees, and further notes it has previously rejected plaintiff's attempt in the amended complaint to revive allegations against individual USPLVN defendants, continuing to find such allegations were insufficient to state an Eighth Amendment claim for pursuing under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

Defendant further asserts this court has no jurisdiction to consider plaintiff's allegations of assault and battery because the United States has not waived sovereign immunity for suits on claims arising from these intentional torts by a government employee. Applicability of the intentional tort exception is a question of subject matter jurisdiction. *Dry v. U.S.*, 235 F.3d 1249 (10th Cir.2000).

The intentional tort exception to the FTCA restricts the government's broad waiver of immunity from reaching "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h). Defendant acknowledges this statutory

exception is itself subject to a proviso within the exception that waives government's sovereign immunity "with regard to acts or omissions of investigative or law enforcement officers of the United States" of any claim arising "out of assault, battery, false arrest, abuse of process, or malicious prosecution." *Id*.  For purposes of this "law enforcement proviso," an "investigative or law enforcement officer" is defined as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." *Id.*

Defendant does not dispute that the BOP officer alleged to have assaulted and battered plaintiff is a "law enforcement officer" as defined in the proviso.  *See* 18 U.S.C. § 3050 (empowering BOP officers or employees to make arrests); *Chapa v. U.S. Dept. of Justice*, 339 F.3d 388, 390 (5th Cir.2003)(a BOP official is a federal law enforcement officer as defined in § 2680(h)).  However, defendant urges the court to follow courts who have interpreted the proviso as applying only to BOP officers acting within their law enforcement or investigative function.

There are limited court decisions regarding the scope of the law enforcement proviso in § 2680(h), with varying results.  *See e.g. Ignacio v. U.S.*, 2010 WL 3219356, *2 (E.D.Va.2010)(noting dispute among the circuits as to the scope of the law enforcement proviso in § 2680(h), and finding courts addressing the issue "can generally be divided up into three categories - those that interpret the proviso narrowly (the Third Circuit), those that interpret it very broadly (district courts in the Second, Fourth, and Tenth circuits), and those that interpret it somewhere between the two

(the District Court of the District of Columbia).").[3]

   The Third Circuit's most narrow interpretation in *Pooler v. United States*[4] restricts the government's waiver of sovereign immunity in the proviso to reach only "investigative or law enforcement officers" who committed one of the itemized intentional torts while conducting a search, seizure, or arrest.   A district court judge in the District of Kansas found this interpretation did not comport with a plain reading of the statute, and rendered the proviso meaningless as to the malicious prosecution claim at issue in that case.   *Crow v. U.S.*, 659 F.Supp. 556, 570 (D.Kan.1987). Instead, that court held the law enforcement proviso permits a malicious prosecution claim against the government "whenever the claim alleges that an investigative officer, acting in his or her investigative or law enforcement capacity, committed acts constituting malicious prosecution, regardless of whether malicious prosecution claim arose directly out of search, seizure, or arrest by officer."  *Id*.

   The Tenth Circuit has more broadly stated that the general waiver of sovereign immunity effected by the FTCA only extends to suits for intentional torts enumerated in the proviso "if the conduct of investigative or law enforcement officers of the United States Government is involved."  *Dry*, 235 F.3d at 1257 (internal quotation marks omitted).

_____

   [3]This and any other unpublished decision is cited for persuasive value only under 10th Cir. Rule 32.1.

   [4]787 F.2d 868 (3rd Cir.1986), *cert. denied*, 479 U.S. 849 (1987).

While neither *Crow* nor *Dry* involved an FTCA claim based on the conduct of a BOP officer, rejection of the narrow interpretation in *Pooler* is evident and in accord with other courts. *See e.g. Reynolds v. U.S.*, 549 F.3d 1108, 1114 (7th Cir.2008)(disagreeing with *Poller* and noting "*Pooler's* requirement of a search, seizure, or arrest has largely escaped the attention of other circuit courts, but numerous district courts have criticized the decision as 'unduly narrow' and lacking 'any principled underpinning.'")(citing cases).

Nonetheless, some courts declining to follow the Third Circuit have restricted the proviso to officers acting in their investigative or law enforcement capacity. *See e.g. Employers Ins. of Wassau v. U.S.*, 815 F.Supp. 255, 259 (N.D.Ill.1993)(FTCA proviso waiving immunity for intentional torts by law enforcement officers "is not based on an actual search or seizure of evidence or arrest, [but] it must at a minimum charge the government with wrongdoing based on 'acts or omissions of investigative or law enforcement officers' while they are engaged in investigative or law enforcement activities"); *Orsay v. U.S. Dept. of Justice*, 289 F.3d 1125, 1133 (9th Cir.2002)(construing ambiguities in favor of immunity, Congress "intended to allow federal government liability only when the investigative or law enforcement officers were acting as such by engaging in investigative or law enforcement activities").

Defendant argues for a similar restriction in this case, seeking to distinguish Lt. Starr's actions, in responding to a disturbance and helping to restore security, as distinct from the "law enforcement or investigative" activities of BOP guards. *See e.g., Holian v. U.S.*, 2009 WL 2413979, **3-4 (W.D.La.2009)(law

enforcement proviso did not apply to military guards engaged in security function of securing gate and stopping arrestee's vehicle; but proviso arguably applied once gate was secure and guards were actively engaged in law enforcement function of forcibly detaining occupants for possible arrest).

On the record in this case, the court declines to make the distinction advanced by defendant.  In the context of an inmate disturbance, Lt. Starr was of course attempting to restore order and secure the safety of inmates and staff, but such action appears on its face to be both within the scope of what is expected during the course of his employment and within his law enforcement authority. *See e.g.* 18 U.S.C. § 3050(3)(authorizing a BOP officer to arrest without a warrant for criminal offenses "if necessary to safeguard security, good order, or government property").  The instant action is thus distinguishable from cases finding the proviso did not apply to allegations involving a federal employee in a workplace incident,[5] or a federal employee acting at the time under a completely different authority or responsibility.[6]  Instead, the

_____

[5]*Orsay*, 289 F.3d at 1136 (workplace dispute involving supervisor marshal pointing loaded gun at employees, with no allegation the supervisor was acting in context of investigative or law enforcement activities); *Costigan v. U.S.*, 2007 WL 2069900 *2 (W.D.Wash.2007) (army staff sergeant performing "take down moves" while teaching defensive tactics class to other guards was "much closer" to law enforcement activity than in *Orsay*, but construing ambiguities in favor of immunity granted motion to dismiss assault claim).

[6]*See e.g. Dry*, 235 F.3d at 1257 (proviso to intentional tort exception, § 2680(h), not applicable to defendant acting at the time under tribal authority rather than as a law enforcement officer under authority granted by U.S. Secretary of the Interior); *Cross v. U.S.*, 159 Fed.Appx. 572, 576 (5th Cir.2005)(§ 2680(h) proviso did

instant action involves allegations of abuse and intentional tortious conduct by a government official authorized to use necessary and reasonable force in carrying out his law enforcement duties. *See Orsay*, 289 F.3d at 1134 (noting Congressional intent in amending § 2680(h) to single out investigative and law enforcement officers authorized to use force and threaten government action, and to address the risk of abuse and intentional tortious conduct by these federal employees).

Accordingly, defendant's motion to dismiss plaintiff's intentional tort claims of assault and battery for lack of subject matter jurisdiction is denied.

*Motion to Dismiss or for Summary Judgment Rule 56*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, __U.S. __ 129 S.Ct. 1937, 1949 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering a motion filed pursuant to Rule 12(b)(6), the court is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted. *Smith v. U.S.*, 561 F.3d 1090, 1098(10th Cir.2009)(quotation marks and citations

---

not apply to military police with investigative capacity on base where plaintiff's allegation involved conduct during "area security" combat training exercise not unique to military police); *Locke v. U.S.*, 215 F.Supp.2d 1033, 1038 (D.S.D.2002)(no showing that tribal police dispatcher was a federal law enforcement agent within meaning of § 2680(h) proviso).

omitted), *cert. denied*, 130 S.Ct. 1142 (2010).  The court must "assume the factual allegations are true and ask whether it is plausible that the plaintiff is entitled to relief." *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir.2009).

Because the court considers materials and exhibits submitted in support of defendant's motion, the court treats defendant's motion as one seeking summary judgment under Rule 56.  See Fed.R.Civ.P. 12(d)(stating that if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56"); *Wells v. Shalala*, 228 F.3d 1137, 1140 n. 1 (10th Cir.2000).  *See also Marquez v. Cable One, Inc.*, 463 F.3d 1118, 1121 (10th Cir.2006)(plaintiff had "explicit notice" where the motion's title referenced summary judgment in the alternative and the motion included materials outside the pleadings).

When considering a motion for summary judgment, the court may enter judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  A dispute is "genuine" if the issue could be resolved in favor of either party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  A fact is "material" if it could reasonably affect the outcome of the action.  *Anderson*, 477 U.S. at 248.  In considering such a motion, the court views all evidence in the light most favorable to the

12

opposing party. *McKenzie v. City and County of Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005). Unsupported conclusory allegations do not create an issue of fact. *Id.*

Because plaintiff proceeds pro se in this matter, his "pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. ...[T]his rule means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. This court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Smith*, 561 F.3d at 1096 (quotations and citations omitted).

"[A]n action under FTCA exists only if the State in which the alleged misconduct occurred would permit a cause of action for that misconduct to go forward." *Carlson v. Green*, 446 U.S. 14, 23 (1980). Defendant contends plaintiff's amended complaint fails to state any viable claim of assault and battery under Kansas law. The court agrees.

## A. Assault and Battery

Plaintiff's FTCA claims against the United States are governed by the law of the state where the alleged tortious activity took place. *Meyer*, 510 U.S. at 114; *Franklin v. U.S.*, 992 F.2d 1492, 1495 (10th Cir.1993).

"In Kansas, assault is defined as an intentional threat or

13

attempt, coupled with apparent ability, to do bodily harm to another, resulting in immediate apprehension of bodily harm. No bodily contact is necessary. The elements of battery include touching or striking another person with the intent of bringing about either a contact, or an apprehension of contact that is harmful and offensive." *Wilson v. Meeks*, 98 F.3d 1247, 1253 (10th Cir.1996)(citing Kansas cases, quotation marks omitted*)*. "The gravamen of a civil ... assault [or] battery... is grounded upon the actor's intention to inflict injury." *Smith v. Welch*, 265 Kan. 868, 875 (1998).

Here, plaintiff alleges no apprehension of immediate bodily harm, and his pleadings are insufficient to find he suffered any immediate apprehension of harm for purposes of establishing an assault by Lt. Starr where plaintiff essentially reports a surprise arbitrary hit from behind by this officer. Nor is plaintiff's mere conclusory statement that Lt. Starr hit him in a willful and malicious manner sufficient to establish the officer's use of force was done in a rude, insulting, or angry manner for the purpose of establishing plaintiff's claim of battery. Plaintiff does not dispute that Lt. Starr made contact with plaintiff while the officer was responding to an inmate disturbance, that internal BOP reviews found Lt. Starr's use of force to be within professional and institutional standards, or that plaintiff was observed by staff and security cameras as being close enough to the fighting to be perceived - and indeed disciplined - as participating in the fight.

The court thus finds defendant is entitled to summary judgment on plaintiff's claims of assault and battery.

**B. Medical Malpractice**

Defendant maintains plaintiff received appropriate and adequate medical care for any injury arising from the April 2, 2006, incident, and further contends plaintiff's claim of medical malpractice should be dismissed because plaintiff has not provided expert opinion testimony to establish the standard of care and causation as required by Kansas law.

To prevail in a medical malpractice action in Kansas, plaintiff bears the burden of proving three elements: "(1) that a duty was owed by the physician to the patient; (2) that the duty was breached; and (3) that a causal connection existed between the breached duty and the injury sustained by the patient." *Wozniak v. Lipoff*, 242 Kan. 583, 586 (1997). Negligence is never presumed and may not be inferred merely from lack of success or from an adverse result from treatment. *Bacon v. Mercy Hospital of Ft. Scott, Kan.*, 243 Kan. 303, 307 (1988). Generally, expert testimony is required in a medical malpractice action to establish the accepted standard of care, to show the physician breached duty owed, and to prove causation. *Schmidt v. Shearer*, 26 Kan.App.2d 760, 764 (1999); *Sharples v. Roberts*, 249 Kan. 286, 295 (1991).

Plaintiff filed no response to defendant's motion, and does not support his claim of medical malpractice with the expert testimony required to establish that any federal employee deviated from the accepted standard of care in treating plaintiff's medical needs, or that the medical care provided or denied caused plaintiff any

injury.[7]   The court thus finds defendant is entitled to summary judgment on plaintiff's claim of medical malpractice.

CONCLUSION

For the reasons stated herein, the court grants defendant's motion for summary judgment on plaintiff's claims of assault and battery, and on plaintiff's exhausted claims of medical malpractice. To the extent plaintiff seeks relief on unexhausted allegations of negligence arising after filing his administrative tort claim, such claims are dismissed without prejudice for lack of subject matter jurisdiction.

IT IS THEREFORE ORDERED that defendant's motion to dismiss for lack of subject matter jurisdiction (Doc. 26) is granted in part, and that defendant's motion for summary judgment on plaintiff's remaining claims (Doc. 26) is granted.

**IT IS SO ORDERED.**

DATED:  This 28th day of September 2011 at Topeka, Kansas.


  s/ Sam A. Crow
SAM A. CROW
U.S. Senior District Judge

---

[7]The court notes that plaintiff's administrative tort claim encompasses allegations of negligent medical care in Kansas at USPLVN, as well as in federal correctional facilities in Arkansas and Tennessee.  No additional analysis of plaintiff's claims under the law of these additional states is required, as both states require expert testimony to establish a claim of medical malpractice.  *See Hall v. Arthur*, 141 F.3d 844 (8th Cir.1998) (applying Arkansas law as requiring expert testimony to establish violation of standard of care in medical malpractice case when asserted negligence does not lie within jury's comprehension as a matter of common knowledge); A.C.A. § 16-114-206.  *See also Thomas v. Nicholson*, 539 F.Supp.2d 205 (D.D.C.2008)(applying Tennessee law regarding plaintiff's burden in providing expert witness testimony to prove elements of medical malpractice claim); Tenn.Code Ann. §29-26-115(a).